EBLING BREWING CO. v. CEREAL PRODUCTS CO.

(Circuit Court of Appeals, Second Circuit. May 4, 1925.)

No. 339.

1. Sales ⬀220—Assignment of sales contract held not assumption by assignee of any of its obligations.

Assignment of sales contract *held* not assumption by assignee of any of its obligations.

2. Frauds, statute of ⬀84—Contract whereby party agreed to accept malt under contract assigned to him, on condition of extension of time for delivery, required to be in writing as new contract and not modification of original.

Contract whereby defendant agreed to accept 1,000 tons of malt under a contract assigned to him by buyer, on condition that seller extend time for delivery, *held* one required to be in writing, as being new contract and not a modification of original contract.

3. Frauds, statute of ⬀106(1)—Letters held not sufficient recognition of contract.

Where plaintiff contracted to sell malt to W. company, which assigned contract to defendant without assumption of obligations by defendant, letters written plaintiff by defendant, informing it of assignment, asking acknowledgment of assignment, disclaiming liability when asked to remit price, but reserving right to call for malt if desired, and informing plaintiff of its own assignment of the contract, did not recognize alleged contract to take malt in consideration of extension of time so as to satisfy statute.

4. Frauds, statute of ⬀106(1)—Promise or recognition of promise by which party is to be charged must appear from document as a whole.

Promise or recognition of promise by which party is to be charged must appear from document as a whole.

In Error to the District Court of the United States for the Southern District of New York.

At Law. Action by the Cereal Products Company against the Ebling Brewing Company. Judgment for plaintiff, and defendant brings error. Reversed.

Louis Salant, of New York City, for plaintiff in error.

Guggenheimer, Strasser & Meyer, of New York City (David L. Podell, Charles H. Meyer, and Mortimer Hays, all of New York City, of counsel), for defendant in error.

Before HOUGH, MANTON and HAND, Circuit Judges.

HAND, Circuit Judge. The action was for damages for breach of contract in refusing to accept delivery of 1,000 tons of

malt. The original contract had been made on February 10, 1920, between the plaintiff and the North Kensington Trading Corporation, by which the North Kensington Company agreed to purchase the malt by August 1, 1920. It was in writing, and no one claims that when originally made the defendant was a party to it, disclosed or undisclosed. On April 16, 1920, two months after the contract was made, the North Kensington Company assigned it in writing to the defendant. The assignment specifically provided against any assumption by the defendant of its obligations. The defendant, by letter of April 24, 1920, advised the plaintiff of the assignment, which, after some delay, the plaintiff recognized. On July 16th, as no orders for delivery had been given, and the stipulated time was approaching, the plaintiff wrote the defendant asking for shipping orders. Thereupon, at the request of the defendant, the North Kensington Company asked for an extension of time for acceptance, to which the plaintiff answered by an undated letter of about July 26, 1920, that the time would be extended until September 10th, the purchaser to pay full carrying charges. On August 9th the plaintiff wrote the defendant explaining the situation and suggesting that the defendant remit the purchase price to the plaintiff's New York manager on September 10th. To this the defendant at once answered that the plaintiff misapprehended its relations to the contract; that in the assignment it had expressly disclaimed any liability; and that the North Kensington Company alone was the purchaser. It reserved the right to call for the malt under its assignment, if desired. On the next day, however, it advised the plaintiff that it had assigned the contract to a third party, an assignment which the plaintiff declined to recognize on August 16th.

This correspondence clearly does not show any assumption by the defendant of the North Kensington contract, and for this the plaintiff relied upon oral evidence that one Cohn, an attorney at law, who the plaintiff asserted was authorized to bind the defendant, had agreed to accept the malt. The jury must be understood to have found that in July, 1920, Cohn deputed Kanen, the president of the North Kensington Company, to procure the extension which the plaintiff gave by the letter of July 26th. In consideration of this extension the plaintiff's witnesses said that Cohn agreed to accept the malt. As we think that the defendant is entitled to succeed upon its plea of the statute of frauds, we find it unnecessary to consider any other question.

[1, 2] The only papers on which the signature of the defendant in any form appears are the following: The letter of April 24th, advising the plaintiff that the contract had been assigned; another of May 21st, saying that they were still awaiting an acknowledgment of the assignment; the letter of August 12th, repudiating any liability; and that of August 13th advising them of their transfer to the third person. We do not see how any of these letters, or all of them in conjunction, can possibly be thought to comply with the statute. The complaint, article 4, alleges that the plaintiff and the defendant agreed that, if the plaintiff would extend the time, the defendant would accept the malt and pay the storage and interest on it; that the plaintiff extended the time as requested, but the defendant refused to accept. Both parties appear to consider the case as though it concerned a modification of the contract. We cannot so regard it, though the result would be the same. The assignment was certainly not an assumption by the defendant of any of its obligations, even if the defendant had not expressly so stipulated. The contract as pleaded was that, if the plaintiff would extend the time, the defendant would accept the malt, and this was also the substance of the proof. That was not a modification of the earlier contract, but an independent contract consisting of the defendant's promise to accept upon a new consideration; i. e., the agreement to extend. That contract had to be recognized in writing by the defendant.

[3, 4] We can find no writing anywhere in the record which contains such a recognition, nor can it be spelled from all the documents taken together. We consider them in turn. The first is the letter of April 24, 1920, which merely tells the plaintiff of the assignment, requests that it may be entered in its records, and advises it that proper notice will be given when the malt is desired. The supposed contract was not then in existence, and, besides, an assignee does not promise to perform. The same may be said of the letter of May 21, 1920. The letter of August 12, 1920, is not the repudiation of a contract recognized as existing, but the denial of any promise to accept whatever. It concludes with a statement that, if the defendant chose to assert its rights as assignee, it would pay for the malt. The plaintiff's

theory we understand to be this: Without some extension the plaintiff was no longer under any obligation to deliver. Hence, as assignee, the defendant had then no rights. To assert any rights as assignee was therefore to assert that the plaintiff was still bound by the contract which could only be in case the defendant had promised to accept. Perhaps the defendant had not the rights which it supposed, but it was certainly far from its meaning in such a mistaken assertion to acknowledge that it had promised to do exactly what it had denied doing in the preceding paragraph. By such a concatenation of legal consequences we cannot force upon words the exact opposite of what they naturally mean. From the documents as a whole must appear the promise or a recognition of the promise by which the party is to be charged. The letter of August 13, 1920, is certainly irrelevant.

The nearest case we have found is Upton Mills v. Baldwin Mills, 147 Minn. 205, 179 N. W. 904, where the buyer acknowledged receipt of the seller's letter setting out the terms and asking confirmation, but declined the contract. Goodman v. Griffiths, 1 Hurl. & N., 574, is also near to the case at bar, though stronger for the seller. The cases cited by the plaintiff do not seem to us to require comment. It is no doubt the rule that a repudiation, if it recognizes the existence of the contract, will serve. There was here no repudiation, but a disclaimer of ever having promised to accept the malt at all. The plaintiff misreads Imperator Realty Co. v. Tull, 228 N. Y. 447, 127 N. E. 263. There the parties had signed a contract for the exchange of land, but the vendor, who could not perform to the letter, with the vendee's consent had prepared a substituted performance. At the law day the vendee repudiated the contract and defended because the vendor had not strictly performed. All that was held was that the vendor's default had been excused by the vendee's conduct, and that the vendee's repudiation was wrongful. While there are indeed many expressions in the books that the statute may not be used to promote injustice, there are no well-considered cases which enforce a promise which has not been recognized in any writing by the promisor.

The case at bar is precisely of the kind which the statute was meant to cover; that is, where the obligation sought to be enforced is dependent upon oral promises unsupported by any writing.

Judgment reversed.